IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELLY F. FERNANDEZ, individually and on behalf of similarly situated individuals,<br><br>    Plaintiff,<br><br>  v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-06409-CW<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT<br><br>(Dkt. Nos. 33, 34) |

Plaintiff Nelly F. Fernandez brings this case pursuant to ERISA § 502(a)(2) against Defendants Franklin Resources, Inc. (FRI), the Franklin Templeton 401(k) Retirement Plan Investment Committee, the Franklin Templeton 401(k) Retirement Plan Administrative Committee, and individual members of the FRI's Board and Committees. Defendants bring motions to dismiss and for summary judgment. Plaintiff opposes both motions. The parties appeared for a hearing on April 3, 2018. Having considered the papers and the arguments of counsel, the Court DENIES both motions.

BACKGROUND

Unless otherwise noted, the factual background is taken from the First Amended Complaint (FAC).

The Franklin Templeton 401(k) Retirement Plan (the Plan) is a "defined contribution plan" under 29 U.S.C. § 1002(34) and an "employee pension benefit plan" under 29 U.S.C. § 1002(2). The

Plan is sponsored by FRI and managed by the Administrative Committee and the Investment Committee. Declaration of Catalina J. Vergara in Support of MTD (Vergara MTD Decl.), Ex. 1 (Plan Document) at 42-44. The Administrative Committee acts as the Plan's administrator and the Investment Committee selects and monitors investments offered by the Plan to participants. Id.; see also FAC ¶¶ 6-9. Plaintiff alleges that Defendants breached their fiduciary duties to the Plan by offering underperforming mutual funds managed by FRI, offering a money market fund rather than a stable value fund, and charging excessive administration fees. Plaintiff alleges that Defendants took these actions for their own benefit and to the detriment of the Plan and its participants.

Plaintiff, who resides in Florida, is a former employee of FRI. She participated in the Plan from 2011 through 2016. She invested funds in her Plan account in at least four Proprietary Mutual Funds: the Mutual Global Discovery Fund, the Income Fund, the Templeton World Fund, and the Mutual European Fund.

On November 2, 2017, Plaintiff filed this suit on behalf of the Plan against Defendants, asserting four claims: (1) breach of fiduciary duty, (2) prohibited transactions in violation of 29 U.S.C. § 1106(a), (3) prohibited transactions in violation of 29 U.S.C. § 1106(b), and (4) failure to monitor fiduciaries. Plaintiff seeks to certify a class of all participants in the Plan from July 28, 2010 to the date of judgment. Among other things, Plaintiff seeks restoration of all losses to the Plan.

Over a year earlier, on July 28, 2016, Marlon Cryer brought suit on behalf of the Plan against FRI and the Investment

Committee, asserting claims for breach of fiduciary duties to the Plan based on the same actions challenged in this case (offering underperforming mutual funds managed by FRI, offering a money market fund rather than a stable value fund, and charging excessive administration fees). Cryer v. Franklin Resources, Inc. et al., Case No. 16-cv-4265 (Cryer), Docket No. 1. On October 24, 2016, the Cryer defendants brought a motion for summary judgment, contending that Cryer could not advance his claims because he had released them in his severance agreement. Cryer, Docket No. 44 (Order Denying Motion for Summary Adjudication and Motion to Dismiss). The Court denied the motion, relying on Bowles v. Reade, 198 F.3d 752 (9th Cir. 1999), and holding that, because Cryer could not "release the breach of fiduciary duty claims made on behalf of the Plan, such claims are not covered by the covenant not to sue." Id. at 7. The Court also denied the Cryer defendants' motion to dismiss, finding that Cryer had adequately alleged a breach of fiduciary duty claim. Id. at 9. On June 20, 2017, Cryer sought leave to file an amended complaint to add new claims for prohibited transactions and failure to monitor and to add as new defendants the FRI Board and individual members of the Board and Committees. Cryer, Docket No. 56. The Court denied Cryer's motion because he did not demonstrate diligence in seeking leave to amend after allegedly discovering in a document production the facts giving rise to his amendment. Cryer, Docket No. 66 at 3. The Court later certified a class of all participants in the Plan from July 28, 2010 to the date of judgment. Cryer, Docket No. 67.

Shortly after the present case was filed, on January 31,

3

2018, the Court found that it was related to Cryer. Docket No. 25.

DISCUSSION

I.  Motion for Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the

ultimate burden of persuasion at trial. Id. at 1107.

II. Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Motion for Summary Judgment

Defendants assert that Plaintiff's suit is barred by a covenant not to sue in her severance agreement. Declaration of Catalina J. Vergara in Support of MSJ (Vergara MSJ Decl.), Ex. 1 (Severance Agreement).[1] Plaintiff disagrees.

Plaintiff signed a severance agreement on December 17, 2015, after her employment with FRI terminated. The severance agreement contains a release, which states:

> (c) **Claims Released.** The Employee understands and agrees that the Employee is releasing to the fullest extent allowed by law all known and unknown, contingent or non-contingent, anticipated or unanticipated claims, promises, obligations, liabilities, causes of action, or similar rights of any type that the Employee may have had, or presently has, against any Released Party (the "Claims"). [ . . . ]

Id. at 3, § 2(c) (emphasis in original). The release goes on to give non-limiting examples of released claims, including "all common law, contract, tort . . . as well as Claims the Employee might have under . . . **the Employee Retirement Income Security Act of 1974**." Id. (emphasis added).

The release is subject to a carve-out provision, which provides exceptions to the definition of claims released:

> (d) **Rights Not Released.** *The Employee understands and agrees that this Release does not release any rights that the law does not permit the Employee to release.* [ . . . ] The Employee further understands and agrees that the Employee is not releasing any right that relates to: [ . . . ] (iii) the Employee's vested participation in any qualified retirement plan; [ . . . ]

---

[1] Defendants contend that the severance agreement is governed by Florida law pursuant to the agreement's choice of law provision. Severance Agreement at 9, § 5(c). Plaintiff does not dispute this point.

7

1   Id. at 4, § 2(d) (emphasis in original).

2       The release is supplemented by a covenant not to sue:

3       (e) **Promise Not to Litigate Released Claims. Unless
        contrary to, or prohibited by, applicable, prevailing
4       law**, the Employee represents that the Employee will not
        bring any lawsuit, arbitration, or action in the future
5       in which the Employee seeks to recover any damages from
        the Released Parties relating to any Claim other than
6       (i) an action to enforce the Employee's rights under
        this Confidential Agreement pursuant to Section 6,
7       below, (ii) an action reserved to the Employee by
        application of law or regulation, or (iii) an action
8       outlined in Section 2(d), above.

9   Id. at 4, § 2(e).

10      In Defendants' view, the release and covenant not to sue

11  broadly promises that the employee, Plaintiff, releases all

12  claims including ERISA claims and will not bring any lawsuit

13  relating to those claims. Plaintiff argues, however, that the

14  release is subject to the carve-out and the carve-out covers this

15  lawsuit. The carve-out provides an exception for "any right that

16  relates to: [ . . . ] (iii) the Employee's vested participation

17  in any qualified retirement plan." Plaintiff argues that her

18  suit seeks to vindicate rights that relate to her vested

19  participation in the Plan.

20      Regardless of whether the severance agreement applies to

21  Plaintiff's claims, the Ninth Circuit's holding in Bowles v.

22  Reade prevents its enforcement here. In Bowles, the Ninth

23  Circuit held that a plan participant cannot settle, without the

24  plan's consent, a § 502(a)(2) breach of fiduciary duty claim

25  seeking "a return to [the plan] and all participants of all

26  losses incurred and any profits gained from the alleged breach of

27  fiduciary duty." 198 F.3d 752, 760 (9th Cir. 1999). Because

28  Plaintiff seeks to bring the same type of claim to restore value

8

to the Plan, she could not have released the claim (or agreed not to bring a lawsuit asserting that claim) without the consent of the Plan. The Court reached the same conclusion with respect to a substantially identical severance agreement drafted by FRI in Cryer, Docket No. 83 (Order Denying FRI's Motion for Reconsideration) at 7. Thus, the severance agreement's release and covenant not to sue cannot be enforced against Plaintiff's claims.

Defendants attempt to distinguish Bowles v. Reade from the present case in two main ways. First, Defendants contend that Bowles dealt with the enforceability of a release, not a covenant not to sue. The Court rejected this argument in Cryer with respect to almost identical provisions, observing that "the covenant not to sue in this case is explicitly a 'Promise Not to Litigate Released Claims,'" and because "Plaintiff cannot release the breach of fiduciary duty claims made on behalf of the Plan, such claims are not covered by the covenant not to sue." Cryer, Order Denying Motion for Summary Adjudication and Motion to Dismiss at 7. Moreover, there is no meaningful difference between a release and a covenant not to sue because bringing suit is the mechanism by which a party can vindicate a legal claim.

Second, Defendants argue that Bowles involved a defined benefit plan, not a defined contribution plan. But nothing in Bowles suggests that its holding is dependent on this fact. Defendants argue that the Supreme Court's holding in LaRue v. DeWolff, Boberg & Assocs., Inc. provided that § 502(a)(2) claims as applied to defined contribution plans are necessarily individual and not on behalf of the plan. 552 U.S. 248 (2008).

9

The Court disagrees. LaRue merely holds that § 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 256. The Supreme Court in LaRue rejected the argument that § 502(a)(2) claims necessarily had to be brought on behalf of the plan, disavowing an interpretation of its holding in Russell that § 502(a)(2) was meant to "protect the entire plan, rather than the rights of an individual beneficiary." Id. at 254 (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985). In doing so, the Supreme Court noted that defined contribution plans were gaining popularity over defined benefits plans, and that for defined contribution plans, "fiduciary misconduct need not threaten the solvency of the entire plan" to give rise to a claim under § 502(a)(2). Id. at 255-56. But LaRue's holding that, in the defined contribution context, § 502(a)(2) permits individual claims, does not mean that all § 502(a)(2) claims must be individual. A plaintiff may still bring a § 502(a)(2) claim on behalf of a plan, even if the plan is a defined contribution plan.

In sum, the severance agreement does not bar Plaintiff's claims in this lawsuit.

II. Motion to Dismiss

Defendants move to dismiss the FAC on a number of grounds: (1) the first-to-file doctrine bars Plaintiff's suit, and (2) Plaintiff fails to state a claim on all four asserted causes of action. The Court addresses each in turn.

A. First-to-file doctrine

Defendants first contend that this suit should be dismissed

in light of Cryer under the first-to-file doctrine.  The first-to-file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).  The purpose of the rule "is to promote efficiency and to avoid duplicative litigation and thus should not be lightly disregarded."  Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citing Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991)).  The first-to-file doctrine requires the court to consider three factors: (1) chronology of the action, (2) similarity of the parties, and (3) similarity of the issues.  Id.  The Court's decision to accept or decline jurisdiction is reviewed for abuse of discretion.  Id.

Plaintiff argues that the first-to-file doctrine applies only where a second case is filed in a different district, which is not the case here.  While some district courts have invoked the first-to-file rule where both cases are filed in the same district, see Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013), it is usually used to transfer the second-filed case to the district where the first-filed case is already pending or to stay the case in favor of a ruling in the first-filed case.  See, e.g., Inherent.com, 420 F. Supp. 2d at 1097 (transferring case); Schwartz v. Frito-Lay N. Am., No. C-12-02740 EDL, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) (transferring case); Kohn Law Grp., Inc. v. Auto Parts

11

Mfg. Mississippi, Inc., 787 F.3d 1237, 1241 (9th Cir. 2015) (affirming stay of case).

The Court will not apply the first-to-file rule here. Where two duplicative suits are pending in the same district, the Ninth Circuit has applied the claim-splitting doctrine rather than the first-to-file rule. Adams v. California Dep't of Health Servs., 487 F.3d 684, 689 (9th Cir. 2007) (abrogated on other grounds). The court reviewed for abuse of discretion a district court's dismissal of a second suit filed after leave to amend was denied in the first suit. Id. at 687-88. The court considered whether the second suit was "duplicative" by "borrow[ing] from the test for claim preclusion" and analyzing "whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." Id. at 689. The test is "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." Id. If the district court finds two cases to be duplicative, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." Id. at 688. Having concluded that the second suit was duplicative, the Ninth Circuit affirmed the district court's dismissal, noting that it was within the court's broad discretion to do so, given the equities of the case. Id. at 692.

Here, the parties involved in both cases are not entirely identical. The putative class in this case is identical to the one certified in Cryer: "All participants in the Franklin

12

Templeton 401(k) Retirement Plan from July 28, 2010 to the date of judgment." FAC ¶ 116; compare Cryer v. Franklin. On Defendants' side, FRI and the Investment Committee have been sued in both cases, but this case adds the Administrative Committee and individual members of FRI's Board and Committees. Defendants have not argued that these additional defendants are privies of the original defendants.

As for the causes of action and issues of the case, Plaintiff's breach of fiduciary duty claim is identical to the one in Cryer and is supported by nearly the same factual allegations. Plaintiff's failure to monitor and prohibited transactions claims, however, were not asserted in Cryer. In addition, at least the prohibited transactions claim relies on new theories and facts discovered after Cryer's complaint was filed, including a grandfathered recordkeeping arrangement whereby FRI offered better terms to other retirement plans as compared to the Plan.

In sum, this suit is not duplicative of Cryer. Considering the equities[2] and the interests of judicial economy, the Court declines to dismiss this case and instead consolidates it with Cryer.

B. Failure to state a claim

Defendants assert that Plaintiff's complaint fails to state a claim for each of the asserted causes of action.

---

[2] Defendants assert that Plaintiff's counsel filed this suit on Plaintiff's behalf after Cryer's motion for leave to amend was denied for lack of diligence. Because this occurred before the class was certified, Cryer's lack of diligence cannot be used to prevent Plaintiff and the rest of the putative class from bringing the same claims in a separate suit.

1. First cause of action: breach of fiduciary duty

The Court rejects Defendants' arguments on Plaintiff's breach of fiduciary duty claim because they are largely duplicative of the arguments the Court rejected in Cryer. The thrust of Defendants' argument is that Plaintiff does not provide facts supporting her contentions that Defendants acted imprudently or that Defendants' decision-making process was conflicted. Plaintiff has, however, provided facts supporting her contentions. See, e.g., FAC ¶¶ 51-52, 56 (describing how proprietary funds underperformed compared to similar funds in the market, employed unsuccessful managers, and received poor ratings from independent agencies such as Morningstar). Defendants contest Plaintiff's allegations. As stated in Cryer, however, "[w]hen considering a motion to dismiss, the Court must read the allegations in the light most favorable to the non-moving party . . . the Court may not resolve such factual questions at the motion to dismiss stage." Order Denying Motion for Summary Adjudication and Motion to Dismiss at 9-10.

2. Second and third causes of action: prohibited transactions

Defendants assert that Plaintiff's prohibited transactions claims are limited by ERISA's statute of repose. A claim may be dismissed under Rule 12(b)(6) if it is clear from the face of the complaint that the statute of limitations or repose has run. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). ERISA's statute of repose provides, "No action may be commenced . . . six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have

14

cured the breach or violation." ERISA § 413(a), 29 U.S.C. § 1113(a). Defendants contend that the complaint is clear that the prohibited transaction at issue is providing proprietary funds, which constitutes "furnishing of goods, services, or facilities" in violation of ERISA § 406. Defendants argue that judicially-noticeable documents[3] show that at least thirty-nine of the funds at issue were first offered more than six years ago.

Plaintiff responds that her prohibited transactions claims accrued each time a plaintiff received underpayment of benefits, or, in the alternative, each time Defendants agreed annually to adopt the same investments and fees. The Court agrees with Plaintiff: her prohibited transactions claims are not time-barred merely because Defendants first offered some of the mutual funds at issue outside of the limitations period. In In re Northrop Grumman Corp. Litig., a district court agreed with this view, reasoning that the defendant had an ongoing duty to monitor the services it offered and the defendant "reviewed and approved, on a yearly basis, annual proposals that set forth the schedule of services [the defendant] planned to provide [] during the upcoming year." 2015 WL 10433713, at *26 (C.D. Cal. Nov. 24, 2015) (citing Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015), which considered a similar issue in the context of a failure to monitor claim).

---

[3] Defendants do not attempt to show that the documents at issue are in fact judicially noticeable. Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (generally, a court may not consider any materials not in the pleadings on a motion to dismiss, unless the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them, or the material is a matter of public record).

15

Defendants attempt to distinguish Northrop Grumman on the basis that Plaintiff has not alleged in her complaint that Defendants conducted a review of the services they intended to provide for the upcoming year. But Plaintiff is not required to so allege in order to state a prohibited transactions claim. It is Defendants' burden to show that it is clear from the face of the complaint that the claim is time-barred, which they have not done.

        3.    Fourth cause of action: failure to monitor

Defendants contend that Plaintiff fails to provide sufficient facts supporting her claim for failure to monitor. An appointing fiduciary has a duty to monitor its appointees. See 29 U.S.C. § 1002(21)(A). "To state a claim for failure to monitor under ERISA, the plaintiff must allege that the defendant failed to review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." Carter v. San Pasqual Fiduciary Tr. Co., No. SACV1501507JVSJCGX, 2016 WL 6803768, at *5 (C.D. Cal. Apr. 18, 2016) (internal quotation marks omitted). Defendants argue that Plaintiff does not allege facts supporting these contentions. Plaintiff alleges that FRI, the Board, and its members failed to monitor the committee members, their performance, and their fiduciary process; failed to ensure that the committee considered superior investment alternatives; and failed to remove committee members who continued to offer imprudent proprietary funds, in spite of the Plan's heavy losses. FAC ¶ 147. Plaintiff also points out potential conflicts of interest of Board members. Id.

16

¶¶ 93-97. This is sufficient to state a claim. A plaintiff is not required to plead specific facts about the fiduciary's internal processes because such information is typically in the exclusive possession of a defendant. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009) ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.").

CONCLUSION

The Court DENIES Defendants' motion for summary judgment (Docket No. 33) and DENIES Defendants' motion to dismiss (Docket No. 34). The Court CONSOLIDATES this case with Cryer v. Franklin Resources, Inc. et al., Case No. 16-cv-4265. The Court will issue a revised schedule for both cases in a separate order.

IT IS SO ORDERED.

Dated: April 6, 2018

CLAUDIA WILKEN
United States District Judge